UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ROBINSON,                        Case No. 15-13746

          Plaintiff,                        Linda V. Parker
v.                                            United States District Judge

KYRA BENNETT, *et al*,                        Stephanie Dawkins Davis
                                              United States Magistrate Judge
          Defendants.
_____/

**REPORT AND RECOMMENDATION GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 22) AND
DISMISSING AS MOOT DEFENDANTS' MOTION TO STAY
DISCOVERY (Dkt. 23), PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (Dkt. 27), AND PLAINTIFF'S MOTION TO DISMISS
PREVIOUSLY-FILED MOTION FOR PRELIMINARY
INJUNCTION (Dkt. 33)**

## I.    PROCEDURAL HISTORY

On October 21, 2015, plaintiff Christopher B. Robinson, a prisoner

currently confined at the Carson City Correctional Facility, filed a lawsuit

pursuant to 42 U.S.C. § 1983 against defendants Kyra Bennett, Michael Hughes,

Tanzi Cole-Tabb, Anthony King, Charles Brown and Kevin Belk ("MDOC

defendants"), alleging violations of the  Eighth and Fourteenth Amendments, a

conspiracy claim under 42 U.S.C. § 1985, and a claim for neglect to prevent under

42 U.S.C. § 1986.  (Dkt. 1).  On January 5, 2016, this case was reassigned from

Magistrate Judge Michael Hluchaniuk to the undersigned Magistrate Judge.  (*See*

Text-Only Order, dated 1/5/2016).  On January 7, 2016, District Judge Linda V. Parker referred all pretrial matters to the undersigned.  (Dkt. 19).  On February 2, 2016, the MDOC defendants filed a motion for summary judgment which is pending in this court.  (Dkt. 22).  On the same date, the MDOC defendants filed a motion to stay discovery.  (Dkt. 23).  On March 14, 2016, plaintiff filed several pleadings, including: a response to the MDOC's motion to stay discovery (Dkt. 26); a motion for preliminary injunction (Dkt. 27); a response to the MDOC's motion for summary judgment (Dkt. 28); and a separately-filed index to exhibits (Dkt. 29).  On March 28, 2016, the MDOC defendants filed a response to plaintiff's motion for preliminary injunction (Dkt. 31), and plaintiff replied (Dkt. 32).  On June 10, 2016, plaintiff filed a motion to dismiss his previously-filed motion for preliminary injunction.  (Dkt. 33).

The undersigned has reviewed the above pleadings and is otherwise fully advised of the premises.  For the reasons that follow, the undersigned **RECOMMENDS** that defendants' motion for summary judgment (Dkt. 22) be **GRANTED.**  Defendants Cole-Tabb, Bennett and Hughes should be dismissed without prejudice.  Defendants King, Brown and Belk should dismissed with prejudice.  The undersigned also **RECOMMENDS DISMISSING AS MOOT** defendants' motion to stay discovery (Dkt. 23); plaintiff's motion for preliminary injunction (Dkt. 27), and plaintiff's motion to dismiss motion for preliminary

2

injection (Dkt. 33).

## II.    FACTUAL BACKGROUND

Plaintiff, Christopher Robinson ("Robinson"), is a pro se prisoner who is
currently confined in the Michigan Department of Corrections ("MDOC") at the
Carson City Correctional Facility (DRF), Carson City, Michigan.  MDOC
Defendant Kyra Bennett was Robinson's parole agent at the Washtenaw County
Parole Office in Ypsilanti, Michigan.  Defendant Michael Hughes also worked as
a parole agent out of the Washtenaw Office and defendant Tanze Cole-Tabb
served as a supervisor at that office.  MDOC Defendants Anthony E.O. King,
Charles Brown and Kevin Belk were all members of the Michigan Parole Board.

Plaintiff alleges that parole officer Bennett lacked probable cause to
authorize parole violation charges against him on April 23, 2013.  (Dkt. 1, ¶18).
Amongst other things, he asserts that Bennett's violation report falsely states that
he resisted and obstructed a police officer at the Huron Valley Prison parole office
on the day he was arrested.  (*Id*. at ¶ 20)  He also claims that agent Bennett
falsified felony parole charges, and falsely stated on the parole violation report
that he failed to register a cell phone and a vehicle as a part of his sex offender
obligations.  (*Id*. at ¶¶ 21, 22).  In addition, plaintiff says that there is other false
information on the parole violation report including that Ryan P. Smith was the
parole supervisor of the Huron Valley Prison on the day of his arrest, instead of

3

Tanzi Cole-Tabb.  (*Id*. at ¶ 24).

Regarding his April 23, 2013 arrest, plaintiff further alleges that parole agent Michael Hughes used unnecessary force by grabbing plaintiff from the back and applying handcuffs "extremely tight" and by slamming his face on Bennett's desk.  (Dkt. 1, ¶ 25).  Plaintiff states that he begged parole agents Hughes and Bennett, and supervisor Cole-Tabb to loosen the handcuffs, indicating that his hands and feet were going numb.  (*Id*. at ¶ 26).  He claims that because of the defendants' actions, he suffered a panic attack and continues to experience no feeling in the right sides of his hands and in the palm area.  (*Id*. at ¶ 27).

Plaintiff additionally alleges that Michigan Parole Board Members, Anthony King, Kevin Belk, and Charles Brown falsified documents to deny plaintiff an interview for a parole hearing, and thereafter refused to grant him parole status.

Robinson sues all defendants in their individual capacities for $500,000 in monetary damages and injunctive relief in the form of an order from this Court placing him on parole status.

## III.   PARTIES' POSITIONS

### A.   MDOC'S Motion for Summary Judgment

The MDOC defendants raise four arguments for dismissal.  First, the MDOC defendants argue that plaintiff did not file a grievance regarding his

complaint allegations against defendants Cole-Tabb, Bennett, or Hughes,

therefore, the court should dismiss plaintiff's complaint against these defendants.

(Dkt. 22, Pg ID 259).  The MDOC defendants say that plaintiff has filed six Step

III grievance appeals while incarcerated.  (Dkt. 22, Ex. B).  No final resolution has

been reached with respect to one of the grievances, i.e. DRF-15-08-2071-15b.  Of

the five remaining grievances, two of the grievances, SRF-09-09-1302-28a and

SRF-09-09-1301-12e1 were filed in 2009, well before the facts underlying

plaintiff's instant action.  Two other grievances, ECF-14-10-2885-27a and ECF-

14-10-2887-27A concern allegations of falsified misconduct tickets and are

factually unrelated to the instant matter. As such, these grievances cannot serve to

exhaust any of plaintiff's remaining claims.  (Dkt. 22, Exs. B-3, B-4).

The sole remaining grievance, DRF-15-08-2221-27d was not  completed or

resolved until <u>after</u> plaintiff filed his complaint in this court.  While the clerk of

court docketed plaintiff's complaint as being filed on October 21, 2015, the

MDOC defendants argue that under the "prison mailbox rule," papers mailed to

the clerk by prisoners are deemed to be filed on the day they are dated and signed

even if received and docketed on a later date. *Williams v. Birkett*, 670 F.3d 729,

732 n.1 (6th Cir. 2012); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 n.2 (E.D.

Mich. 1999).  Because plaintiff did not complete the MDOC grievance procedure

on DRF-15-08-2221-27d before filing this lawsuit, this grievance does not exhaust

any of his complaint allegations. *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006) (in order to properly exhaust, a prisoner must complete the administrative review process).  Thus, the MDOC defendants argue that plaintiff has not properly exhausted his administrative remedies because he did not file a Step III grievance appeal prior to filing this lawsuit. *See Woodford*, 548 U.S. at 94-95.

Next, the MDOC defendants argue that because plaintiff cannot demonstrate that defendant Hughes acted with "deliberate indifference" or that defendant Hughes unnecessarily and wantonly inflicted pain upon plaintiff, Hughes is entitled to summary judgment.  According to the MDOC defendants, on April 23, 2013, plaintiff was scheduled to report to his parole agent, Kyra Bennett at the Washtenaw County Parole Office.  Unbeknownst to plaintiff, he was going to be served with parole violation charges and taken into custody.  (Dkt. 22, Ex. C, Affidavit of Michael Hughes, ¶¶ 4-5).  The MDOC defendants claim that plaintiff has a history of being violent, including an escape from jail using violence. Pursuant to policy, an arrest team was organized in an effort to take Robinson into custody without incident and Agent Hughes was the individual assigned to handcuff the plaintiff.  (*Id*. at ¶ 6).  During the arrest of plaintiff, Hughes cuffed plaintiff's right wrist, but was unable to cuff his left wrist because plaintiff began to resist.  With the help of another parole agent, Agent Hughes was able to cuff both wrists and secure plaintiff.  (*Id*. at ¶¶ 7-8).  Once cuffed, plaintiff refused to

respond to Hughes' questions regarding whether he was okay, so parole supervisor Cole-Tabb told Hughes to return to his office. (*Id*. at ¶¶ 9-10). Hughes affirms that plaintiff never stated that the handcuffs were too tight. (*Id*. at ¶ 11). Hughes' version of the facts was affirmed by parole supervisor Cole-Tabb, and parole agent Bennett. (Dkt. 22, Exs. D & E). Robinson has not provided any documentation indicating that he suffered any injury from the handcuffs. Furthermore, the MDOC defendants argue that plaintiff's continued refusal to cooperate with Hughes' verbal commands and wiggling his arms in an attempt to free himself from the handcuffs suggests, at best, that he suffered only a *de minimis* injury. In sum, the MDOC defendants argue that plaintiff exhibited signs of verbal and physical aggression towards staff and only that amount of force which was necessary to protect all involved in the incident was applied. As such, plaintiff's allegations fail to state a claim of excessive force and Agent Hughes is entitled to summary judgment.

The MDOC defendants next argue that parole/probation supervisor Cole-Tabb and agents Hughes and Bennett are entitled to absolute immunity because they were all acting within the scope of their duties when they served plaintiff with parole charges and took him into custody. *Fleming v. Martin*, No. 01-1422, 2001 U.S. App. LEXIS 21289, at **3 (6th Cir. Sept. 26, 2001) (a probation officer performing duties to ensure a probationer is complying with the terms of his or her

probation is entitled to absolute, quasi-immunity from liability in a civil rights action); *Jenkins v. Michigan Dep't of Corr.*, No. 14-cv-11812, 2015 U.S. Dist. LEXIS 118843, at *9 (E.D. Mich. July 29, 2015) ("[P]arole officers seeking 'to determine whether a defendant is complying with the terms of' his parole are performing a judicial function.").

Finally, the MDOC defendants argue that parole board members King, Brown and Belk enjoy absolute immunity in their quasi-judicial function of determining under what conditions plaintiff could be granted parole. *McCarthy v. Rubitschun,* No. 1:06-cv-327, 2006 U.S. Dist. LEXIS 55897, at*4 (W.D. Mich. Aug. 10, 2006) (collecting cases) ("Members of a parole board have absolute immunity from damages liability for actions taken in the performance of their duties regarding the decision to grant or deny parole because the task is functionally comparable to that of a judge.")

B.    Plaintiff's Response

Regarding exhaustion, plaintiff argues that acceptance of the MDOC's argument would essentially insulate the actions of Hughes, Cole-Tabb, and Bennett from federal judicial review.  Plaintiff says that MDOC would dismiss any subsequently-filed grievance as untimely because plaintiff has only seven days after an incident to file a Step I Grievance.  42 U.S.C. § 1997e(a).  Plaintiff argues that such an approach would not provide an incentive for exhaustion, would not

8

avoid otherwise needless interference with prison administration, would not promote efficiency, and would not produce an otherwise unavailable record for future judicial proceedings. *See Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Plaintiff also argues that defendants are not entitled to summary judgment on a theory of failure to properly exhaust because the MDOC did not reject the grievance on procedural grounds. Indeed, according to plaintiff, under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he failed to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance.

With respect to his claim of "deliberate indifference" against defendant Hughes, plaintiff indicates that his testimony that he could not feel his fingers because of the tightness of the handcuffs, and that he still experiences periodic numbness in his fingers is sufficient to survive a motion for summary judgment. Plaintiff also claims that he was denied the opportunity to go to the hospital or to the medical unit at the jail to treat his injuries. Plaintiff claims that Hughes violated his fourth amendment rights when he: (1) handcuffed plaintiff too tightly; (2) forcefully pinned plaintiff against a desk; and (3) seized plaintiff without a warrant or probable cause. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 133 (6th Cir. 2014) (a claim asserting the use

of force in the course of an arrest "arises under the Fourth Amendment and its

reasonableness standard."). Plaintiff claims that Hughes relied on the incorrect

standard in assessing his liability, the "inflicted maliciously and sadistically to

cause harm" standard that has been rejected in *Graham*. Instead, under the Fourth

Amendment, the court should apply an objective reasonableness test, looking at

the reasonableness of the force in light of the totality of the circumstances. *See*

*Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *Graham*, 490 U.S. at 396-

397.

Plaintiff also rejects the arguments of defendants King, Brown and Belk that

they are entitled to absolute immunity. Plaintiff contends that defendants have not

responded to the factual allegations contained in the complaint, and thus the court

must presume that plaintiff's factual allegations relating to liability are true -

including that defendants maliciously conducted the parole violation process.

Accordingly, defendants are not entitled to summary judgment on plaintiff's

claims.

## IV.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions,

answers to interrogatories and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his

11

favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

B.   Exhaustion

Defendants argue that plaintiff did not file a grievance regarding his complaint allegations against Cole-Tabb, Bennett, or Hughes before filing this lawsuit, therefore, this court should dismiss plaintiff's complaint for failure to exhaust his administrative remedies. The undersigned agrees.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires a prisoner to exhaust all administrative remedies prior to filing a § 1983 claim. Specifically, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at

12

532.  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[P]roper exhaustion of administrative remedies is necessary."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  *Id.*  Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").  A moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden - the plaintiff on a

13

claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007) governs plaintiff's claims here. That policy states, in relevant part:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.
>
> * * *
>
> P. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her normal control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.
>
> * * *

14

R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

* * *

FF. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no response was received, within ten business days after the date the response was due, including any extensions.

GG. The Grievance and Appeals Section shall be the respondent for the Step III grievances on behalf of the Director. Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system. The Grievance and Appeals Section shall forward grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator shall ensure the grievance is investigated and a response is provided to the Grievance and Appeals Section in a timely manner. The Manager of the Grievance and Appeals Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs Division and, for disability issues, to the Equal Employment Opportunity Office within the Bureau of Human Resources, as appropriate, and that a copy of the

15

Step III response is provided to the grievant.

The MDOC defendants correctly point out that plaintiff did not exhaust his administrative remedies, as he filed the instant complaint before receiving his Step III Grievance response – in contravention of the requirements set forth in the above-noted MDOC grievance policy.  As an initial matter, the MDOC defendants provide evidence that plaintiff filed six Step III Grievances while incarcerated. (Dkt. 22, Ex. B).  The grievance at issue in this case, DRF-15-08-2221-27d, was completed and resolved <u>after</u> plaintiff filed his claim in this court.  (Dkt. 22, Ex. B-1, Pg ID 290-300).  Specifically, plaintiff's Step I Grievance signed on August 16, 2015, was received by MDOC on August 18, 2015.  (*Id*. at Pg ID 294).  His Step II Grievance signed on September 12, 2015, was received on September 14, 2015, and his Step III Grievance was received on October 9, 2015.  (*Id*. at Pg ID 291-93).  Plaintiff received responses to his Step I and Step II Grievances on August 21, 2015, and September 28, 2015, respectively.  (*Id*. at Pg ID 294, 293). On October 12, 2015, before resolution of his Step III Grievance, plaintiff filed the instant action.[1]  (Dkt. 1, Pg ID 18).  After this case was filed, the MDOC responded to plaintiff's Step III grievance – upholding the Step I and Step II

---

[1]  Defendants are quite right that the prison mail-box rule indicates that papers mailed to the clerk by prisoners are deemed to be filed on the day they are dated and signed even if received and docketed on a later date. *Williams v. Birkett*, 670 F.3d 729, 732 n.1 (6th Cir. 2012); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 n.2 (E.D. Mich. 1999).  The  court points out that even if it were to apply the date the clerk docketed the complaint, October 21, 2015, plaintiff still would have filed this action eight days before receiving a Step III response.

decisions denying the validity of plaintiff's claims on October 29, 2015. (Dkt. 12, Pg ID 291). Thus, plaintiff's administrative remedies have now been exhausted. Yet, notwithstanding, the court must dismiss plaintiff's claims, because plaintiff cannot perfect the exhaustion requirement during the pendency of his case. *See Roberts v. Lamanna*, 45 Fed. Appx. 515 (6th Cir. 2002) (plaintiff "cannot exhaust [administrative] remedies during the pendency of the action"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Wyatt v. Leonard*, 193 F.3d 876, 878-79 (6th Cir. 1999); *Boles v. Overton*, 396 F. Supp. 2d 808, 809 (E.D. Mich. 2005) ("As exhaustion of internal remedies is a *precondition to filing* an action in federal court, the Sixth Circuit has held that a prisoner cannot satisfy Section 1997e by exhausting administrative remedies during the pendency of the federal suit.") (emphasis in original).

Moreover, there are no curative measures which will save plaintiff's action from operation of this bar. The Court does not have discretion to waive the exhaustion requirement. *Wyatt*, 193 F.3d at 879. And, the "substantial compliance" doctrine, which can negate operation of the bar where the operative facts underlying a prisoner's claims predate enactment of the PLRA, does not apply in this case as plaintiff's claims arose well after the PLRA's enactment. *See Brock v. Kenton Cty.*, 93 Fed. Appx. 793, 799 (6th Cir. 2004) ("We have allowed substantial compliance only in the limited circumstance where the events giving

17

rise to the prisoner's claim occurred prior to the effective date of the PLRA.").
Thus, because the merits of the claim have not been addressed, the proper remedy
is to dismiss plaintiff's complaint without prejudice. *See Thaddeus-X v. Wozniak*,
2000 WL 712383 (6th Cir. 2000).

Because the undersigned has determined that plaintiff failed to exhaust his
administrative remedies, it is not necessary to determine whether defendants Cole-
Tabb, Bennett or Hughes committed a constitutional violation at this point.

C.    Absolute Immunity

The MDOC defendants next argue that parole board members Anthony
King, Charles Brown and Kevin Belk are entitled to absolute immunity because
they were acting in a quasi-judicial function when determining plaintiff's
conditions for parole and should, therefore, be summarily dismissed. The
undersigned agrees.

In *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997), the Court
determined that judges, when performing judicial functions, are entitled to
absolute immunity from suits for money damages. The Sixth Circuit has extended
the scope of that immunity to state boards that perform adjudicatory functions.
*Watts v. Burkhart*, 978 F.2d 269, 278 (6th Cir. 1992). Other circuits have included
parole board officials as being within the coverage of judicial immunity although
apparently the Sixth Circuit has not done so directly. *See Montero v. Travis*, 171

18

F.3d 757, 761 (2d Cir. 1999); *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994); *Homes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005); *Fig v. Russell*, 433 F.3d 593, 598 (8th Cir. 2006). District courts within this circuit have found parole board members entitled to absolute immunity, citing, *Montero*. *Bringard v. Caruso*, 2008 WL 1776974, *5 (W.D. Mich. 2005). The Sixth Circuit has cited *Montero*, in an unpublished opinion, with favor although not specifically for the question of whether parole officers are entitled to immunity. *Massey v. Stosberg*, 2005 WL 1432946 (6th Cir. 2005). The common law doctrine of absolute immunity covers money damages. *Barrett*, 130 F.3d at 254. In § 1983 cases, the immunity includes immunity from injunctive relief where a declaratory decree was violated or declaratory relief is not available. *Bringard*, *supra*. Plaintiff has not contended that declaratory relief is unavailable in the present case, so the immunity that is properly applied to the defendants here includes both money damages and injunctive relief.

Because the undersigned recommends the dismissal of all defendants, it is appropriate to also dismiss as moot defendants' motion to stay discovery (Dkt. 23), plaintiff's motion for preliminary injunction (Dkt. 27), and plaintiff's motion to dismiss motion for preliminary injunction (Dkt. 33).

## V.    RECOMMENDATIONS

For the above-stated reasons, the undersigned **RECOMMENDS** that

19

defendants' motion for summary judgment (Dkt. 22) be **GRANTED.**  Defendants

Cole-Tabb, Bennett and Hughes should be dismissed without prejudice.

Defendants King, Brown and Belk should be dismissed with prejudice.  The

undersigned also **RECOMMENDS DISMISSING AS MOOT** defendants'

motion to stay discovery (Dkt. 23); plaintiff's motion for preliminary injunction

(Dkt. 27), and plaintiff's motion to dismiss motion for preliminary injunction (Dkt.

33).

  The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

  Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 18, 2016                          s/Stephanie Dawkins Davis
                                               Stephanie Dawkins Davis
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 18, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Christopher Robinson #206760, Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov